**Affirm and Opinion Filed May 11, 2021**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00676-CV

## IN THE MATTER OF A.L., A JUVENILE

**On Appeal from the 305th Judicial District Court
Dallas County, Texas
Trial Court Cause No. JD-18-00518-X**

## MEMORANDUM OPINION
Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Myers

A.L. appeals the trial court's order transferring him to the Texas Department of Criminal Justice, Institutional Division, for completion of his determinate sentence. A.L. brings one issue on appeal contending the trial court abused its discretion by ordering the transfer. We affirm the trial court's judgment.

## BACKGROUND

In 2018, the juvenile court adjudicated A.L. delinquent on eight felony offenses committed when A.L. was sixteen years old. Those offenses consisted of assault of a family or household member by impairing breathing on February 25, 2018, and seven other offenses committed on June 1, 2018, namely, five counts of

aggravated robbery using a firearm, one count of robbery, and one count of evading arrest or detention. The trial court ordered A.L. committed to the Texas Juvenile Justice Department (TJJD) for twelve years with possible transfer to the Texas Department of Criminal Justice, Institutional Division (TDCJ).

On August 14, 2019, the Texas Juvenile Justice Department made a referral to the trial court for a hearing to determine whether A.L. should be transferred to TDCJ. The trial court held a hearing on the request on October 25, 2019 and June 18, 2020. At the conclusion of the hearing, the trial court ordered A.L. transferred to TDCJ.

## TRANSFER TO TDCJ

In his sole issue on appeal, A.L. contends the trial court abused its discretion by ordering his transfer to TDCJ. "We review the trial judge's decision to transfer a juvenile from the TYC to the TDCJ under an abuse of discretion standard." *In re J.L.C.*, 160 S.W.3d 312, 313 (Tex. App.—Dallas 2005, no pet.) (citing *In re T.D.H.*, 971 S.W.2d 606, 610 (Tex. App.—Dallas 1998, no pet.); *J.R.W. v. State*, 879 S.W.2d 254, 257 (Tex. App.—Dallas 1994, no writ)). "In deciding whether the trial judge abused his discretion, we review the entire record to determine if the judge acted without reference to any guiding rules or principles." *Id.* (citing *In re T.D.H.*, 971 S.W.2d at 610). "If some evidence supports the trial judge's decision, there is no abuse of discretion." *Id.* (citing *In re T.D.H.*, 971 S.W.2d at 610). "We do not substitute our decision for that of the trial judge and reverse only if the judge acted

in an unreasonable or arbitrary manner. *Id.* (citing *In re T.D.H.*, 971 S.W.2d at 610). "An abuse of discretion does not exist if the trial court bases its decision on conflicting evidence and some evidence supports the trial court's decision." *J.R.W. v. State*, 879 S.W.2d 254, 257 (Tex. App.—Dallas 1994, no writ) (citing *Exec. Tele– Commc'n Sys. Inc. v. Buchbaum*, 669 S.W.2d 400, 403 (Tex. App.—Dallas 1984, no writ)). "The party claiming abuse of discretion has the burden on appeal to show the abuse of discretion." *Id.* (citing *Clade v. Larsen*, 838 S.W.2d 277, 280 (Tex. App.—Dallas 1992, writ denied)).

In determining whether to transfer a youth from TJJD to TDCJ, the trial court may consider the following:

> the experiences and character of the person before and after commitment to TJJD,
>
> the nature of the penal offense that the person was found to have committed and the manner in which it was committed,
>
> the abilities of the person to contribute to society,
>
> the protection of the victim of the offense or any member of the victim's family,
>
> the recommendations of TJJD, the county juvenile board, local juvenile probation department, and prosecuting attorney,
>
> the best interests of the person, and
>
> any other factor relevant to the issue to be decided.

*See* TEX. FAM. CODE ANN. § 54.11(k).

## EVIDENCE

The trial court held the hearing in two parts, the first part on October 25, 2019, and the second part almost eight months later on June 18, 2020.

### October 25, 2019 Hearing

In the October 25, 2019 hearing, the State presented evidence that when A.L. was sixteen years old, he engaged in six incidents of robbery, five of which were aggravated robbery.[1] The trial court assessed a determinate sentence of twelve years and committed A.L. to TJJD.

During his first sixteen months in custody, A.L. had 102 incidents, sixty-three of which were referred to the security unit, and twenty of which resulted in A.L.'s admission to the security unit for at least twenty-four hours. Several of these were for assaultive behavior, including assaults on TJJD staff. A.L. also was charged with possession of a controlled substance. A.L. admitted to staff that he was a member of a gang, "Tresa," which was associated with the "MS-13" gang. He accrued some high school credit, but not as much as would be expected. He completed a vocational course on construction work. He also took courses dealing with anger management. He was not always respectful to staff and his peers. He did not always accept responsibility for his actions. TJJD recommended that A.L. be transferred to TDCJ to complete his sentence.

---

[1] A report in the record states A.L. "fired his pistol at one victim who refused to give up his valuables."

A juvenile's progress at TJJD is measured by progression through five stages, starting with Stage 1 and concluding with the fifth stage, called Stage Yes. At the time of the October 25, 2019 hearing, the court liaison for TJJD testified that A.L. was at only Stage 3.[2] The psychologist who examined A.L. concluded:

> [A.L.] has exhibited aggressive behavior and made poor choices despite alternative interventions offered by TJJD. For the safety and security of the youth and staff in TJJD, then, it is my recommendation that [A.L.] be transferred to TDCJ-ID for the remainder of his determinate sentence.

Ernie Black, a mentor and math tutor for A.L., testified that A.L. had improved during his time at TJJD. After May 2019, A.L. told Black that he was "done with the old way of life." After that, A.L. had not had any major rule violations and only two minor violations. A.L.'s math scores had gone up three grade levels, and he improved from Stage 2 to Stage 4.

A.L. testified he had a rough start at TJJD. He was not in a gang when he arrived there, but he joined one when he was there. He explained that he often ended up in fights because he wanted to look "like a man." In May 2019, A.L. heard TJJD was preparing the papers for his early transfer to TDCJ, and he decided he wanted to change for good. He improved in his school work. He was working to pass the tests so he could take the GED. He had moved up to Stage 4. He had done the group

---

[2] In fact, A.L. was at Stage 4 at the time of the October 2019 hearing. The court liaison corrected his testimony at the June 2020 hearing.

therapy and completed all the treatments. He also was on the facility's student council.

Getting out of the gang was not easy. A.L. explained that someone wanting to leave the gang would "get rolled," meaning "five people fight you because you want to get out." That happened to A.L. in May 2019, and he was charged with a major rule violation; however, it was proven not true. But when A.L. was released from the security unit, he saw one of the youths who had attacked him. "And I let my emotions get me. And then I just assaulted him . . . ."

The trial court took judicial notice of the court liaison's summary report. *See* FAM. § 54.11(d) (at hearing concerning transfer, "the court may consider written reports and supporting documentation from employees of" TJJD). The report described A.L.'s "minor" violations occurring after he decided to change his behavior in May 2019. On August 9, 2019, A.L. was angry, and he tore the name tag off a member of TJJD staff, resisted staff's attempts to restrain him, jumped onto the roof of a vehicle, broke off the antenna, and used the antenna to break a window on the vehicle. This incident would have been a major rule violation except that TJJD failed to prove the damage exceeded $100. A second "minor" rule violation occurred on September 21, 2019, when A.L. was not allowed to attend a birthday party. The court liaison stated in the report that A.L. became upset, "and went into the group room[,] took drawers out of the desk[,] and began throwing them against

the wall. When told to stop[,] he refused, ran out past staff[,] and jumped onto the roof of the van."

After hearing this evidence, the trial court decided to continue the hearing to a later date when the court would hear additional testimony about A.L.'s behavior and progress in the interim.

## June 18, 2020 Hearing

The hearing resumed on June 18, 2020.[3] The court liaison testified that A.L. had completed more treatments, and he testified that the psychologist determined A.L. still had a moderate to high risk because A.L. was not able to consistently apply the skills he had learned in the treatment programs. A.L. had made some academic progress in the interim, completing three more credits, but he had not yet completed his GED or earned a high school diploma. He was still not always respectful to staff and his peers, and he did not always accept responsibility for his actions.

After the October 2019 hearing, A.L. had twenty-five more rule violations. Nineteen of those violations resulted in referrals to the security unit, and six of them resulted in admission to the security unit. For a time, A.L. was doing well, he advanced to the final stage, Stage YES, and TJJD staff were recommending that he be paroled. But then A.L. had major rule violations, and he was demoted to Stage 4. In one incident, A.L. assaulted several youths after they carved a vulgar symbol

---

[3] The June 2020 part of the hearing was held by virtual hearing due to the COVID-19 pandemic pursuant to the orders of the Supreme Court of Texas and with the consent of the parties.

into the doorframe of his door. A.L.'s case manager tried to counsel A.L., but A.L. "ended up fighting with multiple youth on that day." A.L. also had a major rule violation on May 1, 2020, for an assault on staff. After these major rule violations, TJJD staff returned to their original recommendation that A.L. be transferred to TDCJ. Shortly before the June 18, 2020 hearing, A.L. was moved to another facility, and his behavior improved after leaving the original facility.

Ernie Black, A.L.'s mentor, testified that ninety percent of A.L.'s problems came from the dorm he was in, which was "extremely rough." Learning and classwork were harder for A.L. than some of the other youths, but A.L. had made great progress. Black testified that A.L. had been doing better and should be paroled and not transferred to TDCJ. "He's got three parts of his GED, he only needs the math left. And he got a welding certificate. . . . So it's not as though he can't go out and get a job and be a productive citizen in our community."

The court liaison's report included statements by the psychologist treating A.L. The psychologist stated that A.L.'s "recent incident [on April 3, 2020] raises grave concerns about his ability to handle and successfully manage conflicts without the supervision of correctional staff nearby." Although A.L. had participated in multiple treatment groups to prepare him for parole, A.L. had told the psychologist that he could not calm down. The psychologist stated, "I worry about his ability to effectively manage conflict on parole. Therefore, for the safety of the community,

it is my recommendation that [A.L.] be transferred to TDCJ-ID for the remainder of his determinate sentence."

The incident reports showed A.L. had multiple incidents of destructive behavior as well as violent behavior towards TJJD staff and other youths.

After the close of the evidence, the trial court stated A.L. had been adjudicated "for several very serious and violen[t] offenses." The court stated that A.L. had "done better and has come a long way" based on the mentor working with him. A.L. had been sent back to TJJD after the October 2019 hearing, providing him "an opportunity to demonstrate that he really could maintain and get control of his anger and participate in more services." The court stated that A.L. continued to engage in assaults. While the court may have been able to "wrap my brain around" "the need to defend yourself where you have been jumped by others[,] . . . that does not explain the assault to staff. And that is very, very problematic when you look at the number of referrals since he was sent back in October." The trial court ordered that A.L. be transferred to TDCJ.

## ANALYSIS

A.L. argues the trial court abused its discretion by transferring A.L. to TDCJ "when all in [sic] the evidence established A.L. had successfully completed all the programs at TJJD and he had shown he possessed all the tools to demonstrate he had been rehabilitated." Although the evidence showed A.L. had completed all the programs, the evidence did not show A.L. had been rehabilitated. Despite A.L.'s

awareness that he was facing transfer to TDCJ if he did not change his behavior, and his and Black's testimony that he intended to change after May 2019, A.L. continued to have incidents of violent or destructive behavior as late as May 2020, only six weeks before the hearing. The psychologist expressed concern that A.L. could not "successfully manage conflicts without the supervision of correctional staff nearby." The trial court could conclude from the evidence that transferring A.L. to TDCJ was appropriate.

A.L. has not shown that the trial court's order transferring him to TDCJ was an abuse of discretion. We overrule A.L.'s issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers//

200676f.p05

LANA MYERS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

05-20-00676-CV
IN THE MATTER OF A.L., A
JUVENILE

On Appeal from the 305th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. JD-18-00518-X.
Opinion delivered by Justice Myers.
Justices Partida-Kipness and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11ᵗʰ day of May, 2021.